**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRINA GUTIERREZ on behalf of herself and all other persons similarly situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-CV-2021 |
| v. | ) ) | Magistrate Judge Susan E. Cox |
| ADDISON HOTELS, LLC. | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE
PARTIES' JOINT STIPULATION OF SETTLEMENT AND FOR APPROVAL OF
CLASS CERTIFICATION, FORM AND MANNER OF CLASS NOTICE, AND
SCHEDULING FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiff Trina Gutierrez ("Plaintiff"), on behalf of herself and all others similarly situated, move this Court for an order preliminarily approving the Parties' Class Action Settlement Agreement (attached hereto as Attachment 1 (hereinafter, the "Settlement Agreement") and an order approving class certification for settlement purposes, the form and manner of class notice, and scheduling a Fairness Hearing for final approval of settlement. In further support of this Unopposed Motion, the Plaintiff states as follows:

**I.      BACKGROUND**

**A.      SUMMARY OF THE COMPLAINT**

On March 6, 2015, a class action lawsuit was filed in the U.S. District Court for the Northern District of Illinois. The case is presently titled *Trina Gutierrez v. Addison Hotels, LLC.* Case No. 15 C 2021.

Plaintiff asserts one Class claim, or Count, against Defendant Addison Hotels LLC., (hereinafter "Addison Hotels" or "Defendant"), in this Litigation.

Count I of the Complaint asserts collective action claims for violations of the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.* ("FLSA") based on the Defendant Addison Hotels' alleged failure to pay federally mandated overtime wages for all time worked in excess of forty per week. Count II of the Complaint asserts class-wide violations of the Illinois Minimum Wage Law Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") based on Defendant Addison Hotels' alleged failure to pay Illinois mandated overtime wages for all time worked in excess of forty per week.

Defendant disputes that Plaintiff and the Members of the Class Members are owed any wages.

### B.      SUMMARY OF THE SETTLEMENT TERMS

As set forth more fully herein Class Counsel reviewed extensive time and payroll records produced by Defendant for the Named Plaintiff and for a sample of allegedly similarly situated employees. As Class Counsel reviewed these documents, the Parties engaged in extensive arms-length settlement negotiations which have culminated in the proposed settlement agreement attached hereto to resolve all claims raised by Plaintiff on a Class-wide basis. The Parties believe they are and were fully and adequately informed of all facts necessary to evaluate the case for settlement purposes. Defendant continues to deny any wrongdoing but has agreed to settle the matter to avoid the expense and inconvenience of continued litigation. The named Plaintiff and her counsel likewise believe the settlement reached in this matter is a good outcome for Plaintiff and the putative class. The material terms of the settlement are as follows, subject to approval by the Court:

1. **Class Definition**: The class of 44 individuals identified in Exhibit A to Attachment 1, allegedly owed overtime wages is to be defined as, for settlement purposes:

All persons who were employed by Defendant in Illinois between March 6, 2012 and March 6, 2015 and who worked in excess of forty hours.

2. **Settlement Fund**: Defendant shall make a total Settlement Payment of $56,000.00 into a Qualified Settlement Fund within seven days of preliminary approval of this class-wide settlement by the Court. The settlement fund will be apportioned as follows:

   a. Payment of all timely claims submitted by Claimants, determined using the formulae set forth below which is explained below;

   b. Payment of costs associated with administration of the settlement;

   c. Payment to the Named Plaintiff in the amount of $1,000.00 as an enhancement award for their service to the class, as approved by the Court;

   d. Payment to each named Plaintiff in the amount of $1,000.00 in consideration for Named Plaintiff executing of a general release of all claims against Defendant, as approved by the Court; and

   e. Payment of attorneys' fees and costs in the amount of up to $18,000.00, or the equivalent of approximately thirty two percent of the Settlement Fund, as approved by the Court.

3. **Individual Settlement Payments to the Class**: Class Members who file a valid claim form "Claimants" will receive a share of the Class Settlement Amount based on the following formula:

   a. Claimant's hours worked over forty hours per week multiplied by the Claimant's regular rate of pay divided by two plus an equal amount in liquidated damages.

   b. In the event that the sum of Settlement Payments to Claimants, Administration Costs, attorneys' fees awards by the Court, and General Release Payment and Service Payment does not exceed the settlement amount any remaining funds shall be redistributed between Claimants on an pro rata basis.


II.     **STANDARD FOR PRELIMINARY APPROVAL**

The settlement or compromise of a class action requires this Court's approval. Fed.R.Civ.P. 23(e). The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Redman v. Radioshack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. 2014) (*citing Isby, et al. v. Bayh, et al*., 75 F.3d 1191, 1196 (7th Cir. 1996)).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing be given to the Class Members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc*., 327 F.3d 938 (9th Cir. 2003).

### III.    CERTIFICATION OF CLASS IS APPROPRIATE

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In evaluating the fairness, reasonableness, and adequacy of the settlement, the Court should view the facts in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 315 (7th Cir. 1980). The Court's role is to determine whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. See H. Newberg on Class Actions, §24.13 at 60 (3d ed. 1992)(hereafter "Newberg"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974).

#### A.    Plaintiff's Class Claims Should be Certified For Settlement Purposes

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. A plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). First, the action must satisfy

4

all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id.*

Second, the action must satisfy one of the conditions of Rule 23(b). *Id.* Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty Class Members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiff's claims meet the requirements for class treatment of this Lawsuit.[1]

### 1.      Certification Under Rule 23(a)

#### a.      Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. When analyzing whether joinder is impracticable, factors such as judicial economy, geographic diversity of Class Members, and the ability of Class Members to institute individual lawsuits should also be considered. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). "To require a multiplicity of suits by similarly situated small claimants would run

---

[1] As outlined in the settlement papers, Defendant believes that class certification is warranted for settlement purposes only, and reserves all defenses to class certification in the event that the settlement class is not certified. To the extent that Plaintiff's arguments are not specifically limited to "for settlement purposes only," Defendant does not join in them and specifically reserve their rights to argue that class certification is not appropriate should the Settlement not be Finally Approved, or should it become void for any other reason.

counter to one of the prime purposes of a class action." *Id.* at 1333. In this case, the Parties have established that the class is composed of 44 individuals. The size of this putative class easily satisfies Rule 23(a)(1).[2]

### b.    Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class.  Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 484 (7th Cir. 2012). (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In order to satisfy this requirement, there needs to be just one common question of law or fact but that common question cannot be just a superficial similarity. *Dukes*, 131 S. Ct. at 2556; *Jamie S.*, 668 F.3d at 497. Not only must the class claims "depend on a common contention," that common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *Jamie* S., 668 F.3d at 497.

Here, Plaintiff's claims are based on questions of fact and law common to the class. Each Class Member was allegedly employed by Defendant and subject to Defendant's alleged policy of not paying Plaintiff and the Class at time and a half their regular rate for all time worked in excess of forty (40) hours per week. The common question is whether Defendant had a policy of paying its employees at their regular rate for all time worked, including all time worked in excess

---

[2] *See*, for example, Order of Final Approval in the matter of *Rangel et al. v. Commonwealth Hospitality LLC., and Commonwealth Hotels, Inc.*, Case No. 3809, Dkt 66, granting final approval of Class Action settlement involving 34 Class members.

of forty hours per week. The resolution of this question will resolve the matter for the entire class.

### c. Typicality -- Rule 23(a)(3)

The question of typicality is closely related to the preceding question of commonality. The Seventh Circuit has held that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). To meet the typicality requirement, there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group. *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). The claims here of Plaintiff and Class Members arise from the same alleged conduct of Defendant. Plaintiff alleged Defendant's alleged practice of not paying overtime wages violated federal and Illinois law.

### d. Adequacy of Representation -- Rule 23(a)(4)

Rule 23(a)(4) requires the named class representative "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Lau v. Arrow Fin. Servs., LLC*, 2007 U.S. Dist. LEXIS 40066, 17 (N.D. Ill. 2007)(citing *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)). The burden of demonstrating that the class representative is adequate is not heavy" *Sledge,* 182 F.R.D. at 259.

7

Plaintiff satisfies this standard here. Plaintiff does not have antagonistic or conflicting claims with other members of the class. Plaintiff and the class were all employed by Defendant in the State of Illinois and all seek unpaid overtime wages. Plaintiff also has a sufficient interest in the outcome to ensure vigorous advocacy. Adequacy requires the named plaintiff to be conscientious and to "understand the basic facts underlying his claims." *Id*. Plaintiff here understands the general foundation of the case. Each participated in the Parties' informal discovery process, and assisted Class Counsel in reviewing and analyzing documents produced by Defendant,. This qualifies Plaintiff as a "conscientious representative plaintiff" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

As explained, *infra*, Section V(C), the named Plaintiff's attorneys are qualified and able to conduct the proposed litigation vigorously.

**B.     This Action Satisfies the Requirements of Rule 23(b)**

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs seek certification under Rule 23(b)(3). *See Allen v. International Truck and Engine Corp*., 358 F.2d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining "superiority", the court should look to non-exhaustive factors: the

interest of class members in individually controlling separate actions, any litigation concerning the controversy already commenced, the desirability or undesirability of concentrating the litigation, and the manageability of the class action. *Id*. The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll International Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class claims seeking unpaid wages and statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim for unpaid wages under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA)); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-14 (C.D. Cal. 2005) (claim, *inter alia*, for unpaid wages and itemized payroll statements under California law).

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issue is whether Defendant's compensation policies violated the FLSA 29 U.S.C. §201 *et seq*., the IMWL 820 ILCS 105/1, *et seq*., the IWPCA, 820 ILCS 115/1, *et seq.*, and the IDTLSA, 820 ILCS 175/1, *et seq*. The predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 310 (N.D. Ill. 1995). In this case, there is a common nucleus of operative fact that concerns Defendant's compensation policies.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially *dozens* of individual lawsuits and piecemeal litigation.

**C.    Plaintiff's Counsel Should be Appointed Class Counsel**

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In this case, all these requirements are met. Plaintiffs' attorneys have extensive experience and expertise in complex employment litigation and class action proceedings, and are qualified and able to conduct this litigation. Plaintiff's counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA, the IDTLSA and the ECA and proceeded as class actions and/or collective actions under §216(b) of the FLSA.[3]

---

[3] Plaintiff's Counsel has regularly been designated as class counsel in class action employment litigation including: *Mayfield v. Versant* Case No 14 C 7024 (N.D. Ill.) (D.E. 61)(Final Approval 12/16/15); *Ramirez v. Staffing Network et al.,* Case No. 13 C 6501 (N.D.Ill.) (D.E. 142)(Final Approval 7/24/15); *Martinez et al. v. Staffing Network et al.,* Case No. 13 C 1381 (N.D. Ill.) (D.E. 143) (Final Approval 6/30/15); *Alvarado et al. v. Aerotek,* Case No. 13 C 6843 (Final Approval 1/29/2015); *Dickerson v. Rogers' Premier Enterprises, LLC* Case No.13 C 7154 (Final Approval 01/07/15); *Hernandez v. ASG Staffing, Inc.,* Case No. 12-2068 (Final Approval 12/11/14); *Blancas et al. v. Cairo and Sons Roofing, Co. Inc.,* Case 12 C 2636 (Final Approval 12/12/2013); *Dean et al. v. Eclipse Advantage Inc., et al* Case 11-C-8285 (Final Approval 12/17/2013); *Gallegos et al v. Midway Building Services, LTD et al.,* Case No. 12-C-4032 (Final Approval 10/02/2013); *Craig v. EmployBridge et al.,* Case No. 11-C-3818 (Final Approval 04/04/13); *Smith et al. v. Dollar Tree Distribution, Inc.,* Case No. 12-C-3240 (Final Approval 2/27/13); *Ramirez et al. v. Paramount Staffing of Chicago, Inc.,* Case No. 11-C-4163 (Final Approval 1/29/13); *Bautista et al v. Real Time Staffing, Inc.,* Case No. 10-C-0644 (Final Approval 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.,* Case No.11-C-2229 (Final Approval 07/12/12); *Jones et al v. Simos Insourcing Solutions, Inc.,* Case No. 11-C-3331 (Final Approval 05/04/12); *Francisco et al v. Remedial Environmental Manpower, Inc. et al.,* Case No. 11-C-2162, (Final Approval 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.,* Case No. 10-C-6083 (Final Approval 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.,* Case No. 11-C-3818 (Final Approval 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.,* Case No. 08-C-4912 (Final Approval 03/29/10); *Arrez et al v. Kelly Services, Inc.,* Case No. 07-C-1289 (Final Approval 10/08/09); *Acosta et al v. Scott Labor LLC et al.,* Case No. 05-C-2518 (Final Approval 03/10/08); *Ortegon et al v. Staffing Network Holdings, LLC et al.,* Case No. 06-C-4053 (Final Approval 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.,* Case No. 06-C-5066 (Final Approval 04/03/07); *Camacho et al v. Metrostaff, Inc. et al.,* Case No. 05-C-2682 (Final Approval 05/17/06).

IV.    THE PARTIES' PROPOSED SETTLEMENT

After substantial informal discovery, followed by extensive negotiations, and investigation by the Parties and their Counsel, the Parties have reached an agreement to settle Plaintiff's claims asserted in Counts I through II of the Complaint on a class-wide basis. A summary of the settlement terms are outlined below.

A.    The Settlement Class Definition and Settlement Period

As part of the Settlement, the Class is defined as:

> All persons who were employed by Defendant in Illinois between March 6, 2012 and March 6, 2015 and who worked in excess of forty hours.

B.    The Settlement Amount

Under the terms of the Settlement Agreement, Defendant will pay a total Settlement Amount of Fifty Six Thousand and 00/100 Dollars ($56,000.00), less the following amounts, to create a Class Settlement Fund:

1. One Thousand and 00/100 Dollars ($1,000.00), for the Named Plaintiff as consideration for her executing a general release of all claims she has against Defendant;

2. One Thousand and 00/100 Dollars ($1,000.00) for the Named Plaintiff as payment of an enhancement award for her service to the Class;

3. An amount of approximately Thirty Two percent of the Settlement Amount or Eighteen Thousand and 00/100 Dollars ($18,000.00), as approved by the Court, as payment of attorneys' fees and costs.

Additional settlement terms are set forth in the complete Settlement Agreement, filed contemporaneously herewith.

In pursuing the claims of Class Members, and in evaluating the merits of the Settlement, Class Counsel reviewed extensive payroll records produced by Defendant for the Named Plaintiff and for the Class.

The Parties used the above-described information to design a formula that would provide Class Members with significant monetary relief based on Plaintiff's theory of liability during the relevant time period. Each Class Member's unpaid wage claims shall be based on the following formulae:

a)     Claimant's hours worked over forty hours per week multiplied by the Claimant's regular rate of pay divided by two plus an equal amount in liquidated damages.

Although Defendant disputes Plaintiff's theory of liability, Defendant has agreed to create a Class Settlement Fund as described above and provide compensation to the Class Members. Assuming a claim in rate of 100%, the settlement fund of $56,000.00 will be sufficient to Class Members to receive approximately 150% the value of the underlying claim for allegedly unpaid overtime. In the experience of counsel for both Plaintiff and Defendant in class cases involving low wage workers whose current address information is not available, as is the case here, less than 100% of class members typically file a claim with the Settlement Administrator.[4]

---

[4]*See, for example, Dean, et al. v. Mid-West Temp Group, Inc.* No. 11 C 8285 (N.D. Ill. Dec. 17, 2013)(Mason, J.)(Order granting final approval of staffing agency class settlement involving 1,212 class members with twenty-three percent (23%) claim-in rate); *See also* related cases *Craig, et al., v. EmployBridge of Dallas, Inc. et al.*, No. 11 C 3818, and *Hardaway, et al., v. EmployBridge of Dallas, Inc.*, No. 11 C 3200 (N.D. Ill. April 4, 2013)(Pallmeyer, J.)(Orders granting final approval of two staffing agency class settlements involving 7,066 class members with twenty-seven percent (27%) claim-in rate); *Jones, et al v. Simos Insourcing Solutions Corp,* No. 11 C 3331)(Bucklo, J.)(Order granting final approval of staffing agency class settlement involving 3,364 class members with five percent (5%) claim-in rate); *Francisco et al. v. REM Staffing, et al.,* No. 11 C 2162 (N.D. Ill. April 26, 2012)(Grady, J.)(Order granting final approval of staffing agency class settlement involving 4,340 class members with eight percent (8%) claim-in rate); *Alvarez, et al. v. Staffing Partners, et al.,* No. 10 C 6083 (N.D. Ill. Jan. 17, 2012 )(Finnegan, J.)(Order granting final approval of staffing agency class settlement with nine percent (9%) claim-in rate).
.

Here, the Parties have agreed to a rigorous notice procedure designed to maximize the number of claims filed, which will be conducted by Plaintiff's Counsel.

### C. Release and Bar of Claims

All Class Members who have not excluded themselves from the Settlement by filing timely "opt out" notices with the claims administrator shall be deemed to have relinquished all claims as set forth in Section II.F of the Settlement Agreement, and to have released Defendant and the other released parties from any and all liability arising out of those claims. Upon granting final approval of the Settlement, the Court shall dismiss this matter *with prejudice*, retaining jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms

### D. Named Plaintiff's Payments

In addition, as part of the Agreement, Defendant will pay a combined total of $1,000.00 in consideration for the Named Plaintiff's general release of claims against Defendant and a total of $1,000.00 as an enhancement award for Named Plaintiff's service to the Class.

### E. Attorneys' Fees

Finally, pursuant to the Settlement, up to approximately thirty two percent of the Settlement Amount, or $18,000.00, as approved by the Court, will be paid to Class Counsel as payment for all past and future attorneys' fees that have been or will be expended and for all costs incurred and that have or will be incurred in seeing this matter through Final Approval, securing the Final Order, and defending the settlement, including the conducting of any appellate action**.** Payment of attorneys' fees and costs pursuant to this section shall be paid from the Settlement Amount consistent with applicable legal precedent for awards of attorneys' fees under Rule 23.

V.      **THE COURT SHOULD GRANT PRELIMINARY APPROVAL**

A.      **Settlement and Class Action Approval Process**

"Federal courts naturally favor the settlement of class action litigation." _Isby_, 75 F.3d at 1196; _see also_ 2 Herbert B. Newberg & Alba Conte, _Newberg on Class Actions_ § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class members, would be impracticable. The proposed Settlement therefore is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The _Manual for Complex Litigation_ describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

_Manual for Compl. Lit._, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. _See_ 2 Newberg & Conte, at § 11.22, _et seq._

With this Motion, Plaintiff requests that this Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the

settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class Members to receive Notice of the proposed Settlement's terms and of the date and time of the fairness hearing, at which Class Members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

**B.    The Criteria for Preliminary Settlement Approval Are Satisfied.**

**1.    The proposed Settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the Class Members to consider its terms.**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, at 1276. In affirming the trial court's approval of the settlement in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits

of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.
>
> *Id*.

As various courts have noted, "the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement" is viewed as the "most important factor relative to the fairness of a class action settlement." *Redman*, 2014 U.S. Dist. LEXIS 15880, at *9 In this case, Defendant has advanced various arguments that it believes are viable defenses in this matter and, at a minimum, demonstrate that prevailing on the merits or even certifying a class is uncertain if this matter proceeds in the absence of a settlement.

Given the uncertainty of whether the claims could be certified for class treatment, Defendant's defenses on the merits and the difficulties of proof, the terms of the Settlement Agreement compromising the class are fair and reasonable. Counsel for both Parties are experienced in class action litigation. The Parties negotiated a Class Settlement Fund which Plaintiff's Counsel believes this settlement will provide Class Members who make a successful claim on the Class Settlement Fund with substantial monetary relief based on Plaintiff's theory of liability. Given the potentially viable defenses asserted by Defendant, and the recovery that Plaintiff and Class Members will receive approval of this settlement is warranted.

## 2. The Settlement Was Reached Through Arm's-Length Negotiations.

A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)(internal citation omitted). *See also Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.")

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of wage and hour violations in particular. The settlement was reached after nine months of litigation and informal discovery. In negotiating this settlement, Plaintiff's counsel had the benefit of years of experience advocating the interests of low wage laborers combined with an in-depth familiarity with the facts of this case. In addition, Plaintiff's Counsel have successfully litigated and resolved over 30 class actions involving low wage laborers. Similarly, Counsel for Defendant are experienced class action litigators.

Settlement negotiations in this case took place over the course of several months. After a period of extensive investigation and informal discovery, frequent meetings and discussions between Class Counsel and the Named Plaintiff, and discussions between Class Counsel and Defendant's Counsel, , the Parties reached agreement to resolve this litigation, the terms of which are reflected in the Stipulation of Settlement attached hereto as Attachment 1. Plaintiff's Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class.

### 3.     The Settlement Provides Substantial Relief for Class Members

The Settlement provides relief for all Class Members. All Class Members who claim into the fund will  be eligible to receive the full value of their claim plus  pro rate percentage of

liquidated damages. Assuming all Class members timely return a valid claim form, the Class Settlement Fund will be sufficient to satisfy 150% of the value of Class Members claim should Plaintiff have prevailed at trial.

While the Parties have created a strong notice mechanism in this matter, it remains likely that not all class members will claim timely return a valid claim form. In the event that the sum of Settlement Payments to Claimants, Administration Costs, attorneys' fees awards by the Court, and General Release Payment and Service Payment does not exceed the settlement amount any remaining funds shall be redistributed between Claimants on an pro rata basis. Class members will therefore receive the full value of their claim plus liquidated damages.

### 4. Payments to the Named Plaintiff are Appropriate and Reasonable.

The Named Plaintiff shall receive a payment separate from the Class Settlement Fund as specified in Section 13 of the Settlement Agreement, as an enhancement award for her role in litigating this matter and for executing a general release. No other Class Member is being asked to execute a general release. However, for purposes of their claims for unpaid wages, the Named Plaintiff's recovery will be equivalent to that of other Class Members as their settlement share will be calculated the exact same way as all other Class Members. As a result, the Named Plaintiff is not receiving preferential treatment in the settlement of her unpaid overtime claims.

### 5. Plaintiff's Request for Fees and Costs is Fair and Reasonable

Section 14 of the Settlement Agreement provides that Plaintiff's Counsel will receive approximately Thirty Two percent of the Settlement Amount (or $18,000.00), as approved by the Court, for all attorneys' fees and costs incurred and to be incurred in seeing this matter through Final Approval, including: (i) obtaining Preliminary Approval from the Court; (ii) administering the process of notice to Class Members; (iii) responding to inquiries from and otherwise assisting Class Members regarding the Settlement; (vi) assisting in the review of claims submitted by

Class Members; (v) assisting in resolving any objections; and (vi) defending the Settlement and securing the Final Order, including the conduct of any appellate action.

When the amount of the Settlement Amount in this case was negotiated, Defendant's offer was an "all in" global settlement offer, which included all aspects of the settlement consideration relief to the class, attorneys' fees, expenses, and costs. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fees from the fund as a whole." *Boeing Co. v. Van Gement,* 444 U.S. 472, 478 (1980). The common fund doctrine permits plaintiff's counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." *Id.* at 563 (*citing Skelton v. General Motors Corp*., 860 F.2d 250, 252 (7th Cir. 1989) (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund"). Where a common fund is created in return for release of a defendant's liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. *Skelton*, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including this Circuit, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v. Sundstrand Corp*., 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are

19

unjustly enriched. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When determining a reasonable fee in a class action settlement, courts in the Seventh Circuit typically use the percentage basis rather than a lodestar or other basis. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). In deciding fee levels in common fund cases, the Seventh Circuit has consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007)(*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). The normal rate of compensation in the market is one-third of the common fund recovered because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment. *George v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, 7-9 (N.D. Ill. 2012). See also *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)(The typical contingent fee is between 33 and 40 percent in common fund cases.) *See also Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. Ill. 2007)(vacating district court's decision to cap fees at 15% of multi-million dollar common fund after finding court misapplied common fund doctrine in case involving fee-shifting statute); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)(vacating district court's decision to cap fees at 10% of multi-million dollar common fund after finding court had failed to follow market-based approach).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage and hour cases bought under the IWPCA, and IMWL, by both federal and state court judges. In *Arrez v. Kelly Services, Inc.*, Case No. 07 C 1289, the court approved the IWPCA and IDTLSA classes and awarded class counsel, including Plaintiff's

20

Counsel in the instant matter, 30% of the $11,000,000.00 common fund. Indeed, courts around the country frequently award fees in common fund cases in the 30% to 50% range. *See* 18 Class Action Reports at 537 (1995).

The fee requested here, representing approximately thirty two percent of the total Settlement Amount is typical of amounts of awards made and fees negotiated in the Chicago area.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff makes the unopposed request that the Court: (i) grant this Motion for Preliminary Approval of the Stipulation of Settlement; (ii) approve class certification of the class identified herein; (iii) approve the Notice of Class Action, Proposed Settlement and Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; (vi) enter the Proposed Order of Preliminary Approval attached hereto as Exhibit F to Attachment 1; and (vii) grant all further relief deemed just and proper.

Respectfully submitted,

Dated: January 14, 2016

s/Alvar Ayala
Alvar Ayala
Christopher J. Williams
Workers' Law Office, PC
53 W. Jackson Blvd., Suite 701
Chicago, Illinois 60604
Attorneys for Plaintiff